UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

WESTPARK CENTER L L C           CIVIL ACTION NO.  6:24-CV-00232

VERSUS           JUDGE S. MAURICE HICKS, JR.

VERMILION HOLDINGS L L C ET AL    MAGISTRATE JUDGE DAVID J. AYO

### REPORT AND RECOMMENDATION

Before this Court is a RULE 12(B)(6) MOTION TO DISMISS SECOND AMENDED COMPLAINT filed by defendant Vermilion Holdings, LLC ("Vermilion") (Rec. Doc. 39). Plaintiffs Westpark Center, LLC ("Westpark") and West Willow, LLC ("West Willow") (collectively "Plaintiffs") filed an opposition (Rec. Doc. 41) to which Vermilion replied (Rec. Doc. 45).  The undersigned issues the following report and recommendation pursuant to 28 U.S.C. § 636.  Considering the evidence, the law, and the parties' arguments, and for the reasons explained below, this Court recommends that Vermilion's motion be DENIED.

### Factual Background

The following facts are taken from the Second Amended Complaint.  (Rec. Doc. 38). Vermilion owned a commercial shopping center located at 800-840 East Admiral Doyle Drive in New Iberia, Louisiana (the "Property") with nearly 100,000 feet of leasable property.  (Rec. Doc. 38 at ¶7).  On September 24, 2023, as part of its marketing efforts Vermilion and/or Matthews Real Estate Investment Services ("Matthews") "caused" CREXi.com, an online commercial real estate marketplace, to

inform Plaintiffs[1] via email that the Property would be auctioned for sale between October 23 and 25, 2023. (*Id.* at ¶8). Plaintiffs were interested in the property in part because it was anchored by El Paso Mexican Grill, which they learned through their own research was one of the most popular restaurants in New Iberia. (*Id.* at ¶10). West Willow responded to the email solicitation and executed a confidentiality agreement that entitled it to receive Vermilion's marketing materials indicating that Matthews was the listing agent and summarizing the available units with square footages and tenant names. (*Id.* at ¶¶9, 10).[2] West Willow initially declined bidding on the Property because the "vacant spaces negatively affect the Property's value and would add time and expense to lease up the Property of the vacant units." (*Id.* at ¶ 12).

However, on October 20, 2023, Roman Stuart, a broker at Matthews who knew Vermilion had set the reserve price at $8.5 million, contacted Plaintiffs to "try to convince them to bid on the Property" and informed them that his analysis valued the Property at $7.8 million and that he could help them obtain financing. (*Id.* at ¶ 13). Based on "Defendants' representations, including financial and tenant information they provided and Stuart's representations and analysis, West Willow

---

[1] Westpark and West Willow are limited liability companies "owned and managed by the same people." Each limited liability company has one member, Iberia Plaza Manager, LLC. Iberia Plaza Manager, LLC has two members, Vijay Kumar Mishra and Deepti Mishra, who are both residents of Galveston County, Texas. (*Id.* at ¶¶ 3, 4, 8).

[2] Vermilion's marketing materials specified that (a) the restaurant outparcel was occupied by El Paso Mexican Grill, (b) Unit "C1" was occupied by Thrive Nutrition, (c) Unit "C2" was vacant, and (d) Units "G" and "H" were vacant. (*Id.* at ¶11).

decided to participate in the auction and registered with CREXi.com on October 24, 2023." (*Id.* at ¶¶ 14, 15).

On the morning of October 25, 2023, Stuart, faced with the prospect of not hitting "Vermilion's auction reserve amount," informed Plaintiffs that Dollar General intended to relocate its property to spaces "G" and "H" and that he was awaiting a letter of intent from Dollar General. (*Id.* at ¶ 15). In response, West Willow placed its first and second bids of $7.25 million and $7.95 million, respectively. (*Id.* at ¶ 16). Shortly before the auction closed on October 25, 2023, Stuart emailed Dollar General's letter of intent[3] to Plaintiffs and others causing a dramatic increase in the bids submitted for the Property. As a result, West Willow placed a bid of "$8.5 million - $700,000 over what Stuart had represented was the property's value pre-Dollar General letter of intent." (*Id.* at ¶ 18). West Willow's final bid was the "winning bid." (*Id.*).

Subsequently, Westpark and Vermilion executed a written Purchase and Sale Agreement for the Property (the "Contract") which required West Willow to deposit $875,000 in earnest money into escrow and scheduled November 27, 2023 as the closing date. (*Id.* at ¶ 20). West Willow deposited the earnest money into the trust account of the closing agent, Ticor Title Company, on October 26, 2023. (*Id.* at ¶ 20). On November 27, 2023, the parties executed an Addendum to the Contract extending the closing date to December 29, 2023, and releasing the earnest money from escrow

---

[3] The letter of intent was unsigned but was on Dollar General's letterhead and provided for a ten-year term with the annual base rental in the amount of $150,000.00. It further provided for two option periods, each for five years, in which the annual base rental would increase to as much as $181,500.00. (*Id.* at ¶ 17).

to Vermilion. (*Id.* at ¶ 21). On December 15, 2023, West Willow and Westpark executed a written Assignment Addendum to the Contract under which West Willow assigned all of its rights and obligations to the Contract to Westpark. (*Id.* at ¶ 22).

On inspection of the Property, Westpark learned that several tenants including El Paso no longer occupied the Property, that an undisclosed antique store and a barbershop occupied two of the units,[4] that "Dollar General's interest was only as a 'contingency' if it could not successfully renegotiate its lease at its current location," and that "the marketing materials of the Property contained misrepresentations as to the amount and value of certain leases." (*Id.* at ¶¶ 24-28). Plaintiffs contend that Defendants failed to provide adequate information regarding the leases of the Property prior to the closing date of the Contract. As a result of the misrepresentations and breaches of the Contract, Westpark terminated the Contract prior to the closing date and demanded return of its earnest money. (*Id.* at ¶ 33). Vermilion refused to return the earnest money. (*Id.*).

## Procedural Background

On February 19, 2024, Plaintiffs filed the instant suit against Vermilion and Matthews. Plaintiffs' suit, as amended, seeks damages for breach of contract, "bad faith breach of contract," rescission of contract, "negligent and/or fraudulent

---

[4] Plaintiffs claim Defendants represented that Unit C2 was vacant, but it had been leased to an antique store. In addition, Defendants represented that Unit C1 was leased to Thrive Nutrition, but it was leased to a barbershop. (*Id.* at ¶¶25, 26).

misrepresentations and omissions," and violations of the Louisiana Unfair Trade Practices Act ("LUTPA"). (Rec. Docs. 1, 3, 38).[5]

Vermilion seeks dismissal of all claims against it pursuant to Rule 12 (b)(6) on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted. These motions have been fully briefed and are properly before this Court.

## **Applicable Standards**

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

---

[5] The First Amended Complaint and the Second Amended Complaint were filed on February 20, 2023, and on June 1, 2024, respectively. (Rec. Docs. 3, 38). Specifically, in the Second Amended Complaint Westpark seeks damages for breach of contract, and "bad faith breach of contract," from Vermilion; Westpark and West Willow seek damages for recission of contract from Vermilion; and West Willow seeks damages for "negligent and/or fraudulent misrepresentations and omissions" and for violations of LUTPA from both Vermilion and Matthews. (Rec. Doc. 38).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atl.*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell*

*Atl.*, 127 U.S. at 556). *See also In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008). Although "[t]he failure-to-state-a-claim inquiry typically focuses on whether the plaintiff plausibly alleges the element of a claim," a "Rule 12(b)(6) dismissal may also 'be appropriately based on a successful affirmative defense' provided that the affirmative defense 'appear[s] on the face of the complaint.'" *Am. Precision Ammunition, L.L.C. v. City of Mineral Wells*, 90 F.4th 820, 824 (5th Cir. 2024) (quoting *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). In this situation, it must be apparent from "the plaintiff's own allegations" that a defense is fatal to the claim. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2021). [T]he pleadings must 'reveal beyond doubt that the plaintiffs can prove no set of facts' that would overcome the defense or otherwise entitle them to relief." *Id.* A claim suffering from this kind of facial deficiency warrants dismissal because it has "a built-in defense and is essentially self-defeating." *Id.* (quotation omitted).

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6) a court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir. 2004). When reviewing a motion to dismiss, a district court may also consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th

Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).

## Analysis

In support of the instant motion, Vermilion submits eight exhibits and asserts that each item was incorporated into the Second Amended Complaint by reference and, therefore, may be considered on a Rule 12(b)(6) motion to dismiss. These following exhibits were attached:

> Exhibit 1: Auction Package including rent rolls and Crexi Terms and Conditions
> Exhibit 2: Purchase and Sale Agreement with all addendums
> Exhibit 3: Letter of Intent from Dollar General
> Exhibit 4: Barbershop lease
> Exhibit 5: Antique store lease
> Exhibit 6: Thrive lease
> Exhibit 7: El Paso lease
> Exhibit 8: Westpark letters seeking to terminate contracts.

(Rec. Docs. 39-2 to 39-10).

Vermilion asserts that the above attached exhibits explicitly express "Plaintiffs' due diligence obligations and Vermilion's obligation to supply information." (Rec. Doc. 39-1, p. 7). Vermilion further asserts that it supplied the information required—thus complying with its contractual obligations—but that Plaintiffs failed to conduct the "[r]equired due diligence," "waived and/or released in the auction agreements and contracts all the claims made," and failed "to abide by the contractual requirement to put VERMILION on notice of alleged defects and allow five business days to cure the alleged default." (Rec. Doc. 39 at ¶4).

Accordingly, Vermilion contends Plaintiffs have failed to state a claim upon which relief can be granted.

In response, Plaintiffs contend that Vermilion's motion "is a rushed motion for summary judgment wrapped in the trappings of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." (Rec. Doc. 41, p. 8) Plaintiffs state:

> Indeed, although the Motion is supposed to be based solely on Westpark's Complaint, Vermilion spends almost no time discussing Westpark's Second Amended Complaint. Instead, Vermilion has asserted every argument it could conceive, thrown them against the wall, and is hoping at least one of them sticks. Moreover, Vermilion bases its arguments on documents that are not only not referenced in Westpark's pleadings but were never even produced to Westpark. Indeed, some of Westpark's claims in its Complaint are based on this very failure to produce. The court should deny the Motion as it is procedurally improper. To the extent the court converts the Motion into a motion for summary judgment under Rule 56, Westpark requests the court deny the Motion under Rule 56(d)(1) or permit Westpark to conduct discovery under Rule 56(d)(2).

(*Id.*)

The Court agrees with Plaintiffs' assessment. Vermilion's motion is grounded on Plaintiffs' alleged failure to conduct its due diligence before executing the Contract. Because Plaintiffs' failure to conduct due diligence represents an affirmative defense in favor of Vermilion, Plaintiffs need not plead facts to overcome them. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (exhaustion is an affirmative defense that plaintiffs need not specifically plead in their complaints); *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (plaintiff's pleadings need not identify elements that relate to affirmative defense).

Rather, it is defendant who bears the burden of pleading an affirmative defense. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Although dismissal under Rule 12(b)(6) sometimes may be premised upon a successful affirmative defense, that defense must appear on the face of the complaint. *EPCO, supra*. In other words, the facts supporting the affirmative defense must be uncontroverted by the parties. *Mosley v. Bristow*, 2023 WL 6976891 at *3 (E.D. La. Oct. 23, 2023) (citing *Canidae, LLC v. Cooper*, 2022 WL 660197, at *16 (N.D. Tex. Feb. 9, 2022)). Most affirmative defenses fail when tested against Rule 12(b)(6) standards. *Id*.

Here, the Complaint does not establish the defense on its face. The Court agrees with the Plaintiffs' contention that it would be unfair to adjudicate Vermilion's pre-discovery affirmative defense motion as one for summary judgment under Rule 56. It would also be unfair to allow Vermilion to frame the scope of discovery by limiting Plaintiffs to traversing the extraneous evidence that Vermilion selected in support of its motion. Therefore, the Court disregards the extraneous evidence attached to Vermilion's motion and limits its consideration solely to the face of the Complaint and the controlling law. Focusing solely on the allegations of the Complaint, the Court finds that the facts necessary for Vermilion to meet its burden of proof as to its affirmative defense are not present on the face of the Complaint and no good faith argument to the contrary can be made. Accordingly, the Court recommends that the instant motion be denied.

## Conclusion

For the reasons discussed herein, this Court recommends that the RULE 12(B)(6) MOTION TO DISMISS SECOND AMENDED COMPLAINT filed by defendant Vermilion Holdings, LLC (Rec. Doc. 39) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.

Signed in Chambers this 20th day of February, 2025.

_____
David J. Ayo
United States Magistrate Judge